*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2011-138

AUGUST TERM, 2011

| | |
|---|---|
| In re F.S., J.S., E.S., W.S., X.S. and K.S., Juveniles | } APPEALED FROM: |
| | } |
| | } |
| | } Superior Court, Chittenden Unit, |
| | } Family Division |
| | } |
| | } DOCKET NOS. 89/90/91/92/93 & |
| | 94-2-07 Cnjv |

Trial Judge: Edward J. Cashman
James R. Crucitti

In the above-entitled causes, the Clerk will enter:

Father appeals an order of the superior court, family division, terminating his parental rights with respect to his six children. We affirm.

The six children who are the subject of this case were born between March 1996 and August 2005. In February 2007, when the State filed petitions alleging that the children were in need of care or supervision (CHINS), father was living in a household with mother, their six children, his girlfriend, and her two children. That same month, the family court transferred custody of the children to the Department for Children and Families (DCF) based on mother's inability to protect the children from father, who was accused of physically and sexually assaulting his girlfriend and enticing the children to assault the girlfriend. Father was arrested and charged with several offenses in connection with the assaults. Eventually, he was convicted on three of the charges and sentenced to serve a minimum term of fifteen years in prison.

In April 2007, mother stipulated to an adjudication of CHINS, but father contested DCF's petitions. A merits hearing concerning father's objections was delayed because his attorney withdrew and a new one had to be appointed. At a disposition hearing in July 2007, the court, over father's objection, granted DCF custody and adopted a plan calling for the children's reunification with mother. The parties agreed that father's CHINS merits hearing should be postponed for the time being while his criminal case progressed. After spending ten months in a foster home, the children were reunited with mother in November 2007. The next month, the court transferred custody from DCF to mother.

Meanwhile, at a September 2007 status conference, father's new attorney agreed that the merits hearing should be delayed until father's criminal case was resolved. A third attorney for father also agreed to this procedure at a November 2007 status conference. A fourth attorney entered his appearance for father in June 2008. In February 2010, following an unexplained delay in the case, the family court and the parties agreed at a status conference that a merits hearing should be scheduled because father's criminal proceedings had ended.

A merits hearing was finally held on February 23, 2010. One month later, the court entered an order adjudicating the children CHINS. The court concluded that the State had demonstrated by clear and convincing evidence that at the time the petitions were filed the children were without proper parental care because of mother's inability to protect the children from father's assaultive behavior, which posed a serious threat to the children's emotional and developmental well-being. In April 2010, DCF filed a disposition report and a petition seeking to terminate father's parental rights. After DCF had presented most of its evidence at the termination hearing, father's attorney informed the court that father had filed a new appeal in his criminal case challenging the denial of his motion to withdraw his plea. The court and the parties agreed to postpone the termination hearing until father's criminal appeal was resolved. Following that appeal, a final day of the termination hearing took place on March 31, 2011, after which the court entered an order terminating father's parental rights. In its termination order, the court concluded that father had never played a constructive role in the children's lives and would not be able to resume parental duties within a reasonable period of time, given that he would not be released from jail before the youngest child turned eighteen.

Father appeals the termination order, arguing for the first time that the superior court lacked both subject matter jurisdiction and statutory authority to hold a second set of merits and disposition hearings concerning him. According to father, because a CHINS proceeding concerns the children's circumstances rather than the parents' alleged transgressions, there was no logical or statutory basis for the court to bifurcate and delay the CHINS and disposition proceedings for him. In father's view, the court lacked the authority to repeat the merits and disposition hearings as if neither had previously taken place and revisit the already determined issue of whether the children were CHINS in 2007. Father contends that, by the time of the second round of CHINS and disposition hearings, the issue of whether the children were CHINS in 2007 was moot. Father asserts that the family court has jurisdiction under 33 V.S.A. § 5103(a) to determine in CHINS proceedings only whether children are in need of care or supervision at the time of the proceedings, but that in this case the court's findings made it clear that at the time of the renewed CHINS proceeding the children were thriving in mother's custody and therefore not in need of care or supervision.

We find no basis to overturn the family court's termination order. Mother stipulated that the children were CHINS, but because father contested DCF's CHINS petitions, the court was obligated to hold a hearing and make findings regarding father's challenge to the petitions. The court and the parties, including father, determined that it would be more efficient to wait until father's criminal case was resolved. In essence, the CHINS hearing was continued until father's criminal proceedings were resolved to give father an opportunity to contest the CHINS petitions. Doing so may not have been necessary or even appropriate under the circumstances. Nonetheless, given this Court's determination that the statutory time limits in the Juvenile Procedures Act "are directory and not jurisdictional," In re M.C.P., 153 Vt. 275, 294 (1989); In re M.B., 158 Vt. 63, 67 (1992); see In re J.R., 153 Vt. 85, 92-93 (1989) (holding that nothing in juvenile statutes suggests that delay in holding disposition hearing beyond statutory time limit voided disposition order or CHINS adjudication), the family court retained subject matter jurisdiction over the delayed CHINS proceeding. Therefore, father's procedural objections to the timing of the delayed CHINS proceeding do not fall within the limited category of jurisdictional objections that may be raised at any time, including for the first time on appeal. Cf. In re N.H., 2005 VT 118, ¶ 7179 Vt. 537 (mem.) (holding that because family court had "subject matter jurisdiction over the general type of controversy presented by this case, [] none of its orders were void as the result of irregularities in its assumption of jurisdiction under the UCCJA").

We recognize that, in contrast to N.H., father is arguing that the family court lacked authority to hold a second set of CHINS and disposition hearings to consider his objections to the CHINS petitions. Nonetheless, we conclude that, even assuming such a procedure was unnecessary or even improper, it did not deprive the court of subject matter jurisdiction so as to allow father to acquiesce in it for months, only to object to it for the first time on appeal after his parental rights were terminated. This case is distinguishable from In re B.B., 159 Vt. 584, 588-89 (1993), where we reversed a termination order based on the mother's argument, raised for the first time on appeal, that the court erred by reserving its ruling on a termination petition for three months to see how the mother progressed towards a potential reunification with her child. Although the mother had not objected to the family court's order postponing its decision on the termination petition, we noted that the "real defect" was that, by postponing its decision, the court in effect terminated the mother's parental rights months after its initial disposition order without first finding that there had been a substantial change in material circumstances, as required by the applicable statute. Id. at 589. Thus, we reversed the decision, not because of a "technical defect" in the court's procedure, but rather because the court applied the wrong standard and made inadequate findings in adjudicating the termination petition. Id. The same cannot be said here. All parties involved determined that it made sense to wait until father's criminal proceedings ended before holding proceedings in which father could contest the CHINS petitions. We find unavailing his attempt to second-guess that strategic decision after his parental rights were terminated by claiming that the court lacked subject matter jurisdiction.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Denise R. Johnson, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice