392 A.2d 951 (1978)
In re D. R.
No. 294-77.
Supreme Court of Vermont.
September 29, 1978.
Michael J. Sheehan, Windsor County State's Atty., White River Junction, for plaintiff.
Klevena & Rounds, P.C., Windsor, for parents.
James L. Morse, Defender Gen., Montpelier, and Michael S. Kupersmith, Juvenile Defender, Burlington, for D.R.
Before BARNEY, C. J., and DALEY, LARROW, BILLINGS and HILL, JJ.
*952 DALEY, Justice.
The question presented in this appeal is whether the district court, in a juvenile proceeding held in accordance with the provisions of 33 V.S.A. chapter 12, was justified in terminating all parental rights to D.R. after the child was first found to be in need of care and supervision. 33 V.S.A. § 656.
In May, 1977, D.R. was removed from her home under a voluntary agreement entered into by her parents with the Department of Social and Rehabilitation Services, for a period to end August 31, 1977. D.R. has not been with her parents since her removal in May. In June, 1977, formal juvenile proceedings were commenced by petition of the state's attorney at the request of the Commissioner of Social and Rehabilitation Services. 33 V.S.A. §§ 644-646. Hearings were held in July, which resulted in a finding by the juvenile court that D.R. was a child without proper care and supervision in that she had been deprived of proper parental care, education in the broad family supportive sense, [and] medical and other necessary care of a supportive emotional, psychological nature for her well-being." 33 V.S.A. §§ 632(a)(12)(B), 654(a). Following this determination, a disposition hearing was held in August, 1977, and the court made an order transferring the legal custody, guardianship, and residual parental rights to D.R., including the authority to consent to her adoption, to the Commissioner of Social and Rehabilitation Services. 33 V.S.A. §§ 632(a)(6), 632(a)(16), 654(b), 656(a)(3).
The findings of fact made by the juvenile court, not challenged by the parents, reveal a pattern of conduct on the part of D.R.'s parents that is far from commendable. At the time of the initial hearing, in July, 1977, D.R. was a six-year-old child who was not toilet trained. Her parents attempted to correct the situation in an unenlightened manner which, at times, could be termed cruel. The child's soiling problem was diagnosed as psychological and not physical.
We will not repeat other facts found by the court that demonstrate the inability of the parents, at the time of the hearing, to properly care for their child, because our review of the record convinces us that the court was fully warranted in finding D.R. to be in need of care and supervision under 33 V.S.A. §§ 632(a)(12), 654(a), and fully warranted in transferring her custody and guardianship to the Commissioner of Social and Rehabilitation Services. Indeed, the parents do not contest such finding and transferral.
The parents do contest the court's complete severance of all residual parental rights to D.R. They do not question the authority of the court to make the order, but contend that such drastic action was not warranted at the time the child was first found to be in need of care and supervision. We agree.
The juvenile court, it is true, has the authority, once it has found a minor in need of care or supervision as defined in 33 V.S.A. § 632(a)(12), to sever immediately all parental rights. 33 V.S.A. §§ 654(b), 656(a)(3). Orders of this nature made in the initial proceedings completely bar all hope of family reunion; they preclude even the possibility of review in the event of improvement or elimination of the causes and conditions which triggered the separation. We have described such power as "awesome." In re J.M., 131 Vt. 604, 607, 313 A.2d 30, 31 (1973). It should be used with extreme care and only as a last resort in carrying out the legislative purpose of providing for the care, protection, and wholesome development of children coming within the provisions of 33 V.S.A. chapter 12. 33 V.S.A. § 631(a)(1); In re J. & J.W., 134 Vt. 480, 485-86, 365 A.2d 521, 525 (1976) (Larrow, J., concurring). The Legislature has expressly provided that this purpose is to be achieved, "whenever possible, in a family environment, separating the child from his parents only when necessary for his welfare or in the interests of public safety." 33 V.S.A. § 631(a)(3).
Our polestar has been the best interests of the child, e. g., In re Rathburn, 128 Vt. 429, 434, 266 A.2d 423, 426 (1970), *953 but we have also stated that the rights of the parents must be considered. In re N.H., 135 Vt. 230, 236-37, 373 A.2d 851, 856 (1977); In re J. & J.W., supra, 134 Vt. at 485-86, 365 A.2d at 525 (Larrow, J., concurring). The Legislature gave recognition to both interests when it recently added 33 V.S.A. § 667, the so-called "best interests of the child" statute. The statute imposes an obligation upon the juvenile court to consider the best interests of the child in accordance with four criteria whenever a petition is filed for custody of a minor without limitation as to adoption. One such criterion is "[t]he likelihood that the natural parent will be able to resume his parental duties within a reasonable period of time." 33 V.S.A. § 667(3). We construe this provision, in conjunction with 33 V.S.A. § 631(a)(3), as evincing a legislative policy of permitting adoption without parental consent only when the best interests of the child cannot be achieved by temporary removal and placement outside the home. We also read § 667(3) as expressing a general policy that total termination of parental rights will not be ordered in the first instance if there is a reasonable possibility that the causes and conditions which led to the filing of the petition can be remedied and the family restored within a reasonable time. See In re William L., 383 A.2d 1228, 1233 (Pa.1978).
There was no evidence before the juvenile court that D.R.'s soiling problem, the cause of all the conflict, could not be remedied. On the contrary, the evidence reveals steady improvement in D.R.'s condition while in foster care. The lower court found that D.R. is less anxious, is starting to be toilet trained, and is trying hard to achieve this goal. The court also found that D.R. has been able to thrive and develop some normal and spontaneous behavior patterns while in foster care.
As long as a reasonable possibility exists, as it does here, of remedying D.R.'s soiling condition within a reasonable time, total severance should not be decreed. Continuation in foster care for a reasonable period, especially where the child is improving under such care, may not make the child readily adoptable, but is consonant with the expressed policy of the Legislature to preserve and protect the family unit whenever possible. 33 V.S.A. § 631(a)(3). Although we recognize the concern of the court in the light of the circumstances disclosed by the evidence, nevertheless we hold that it acted prematurely in granting total severance of parental rights here.
That part of the court's September 2, 1977 order transferring legal custody and guardianship over D.R. to the Commissioner of Social and Rehabilitation Services is affirmed. The remainder of the order transferring residual parental rights to D.R., including the authority to consent to her adoption, to the Commissioner of Social and Rehabilitation Services is vacated.