2006 VT 60

## In re D.G. and C.G., Juveniles

[904 A.2d 1206]

No. 06-073

¶ 1. July 24, 2006. Mother appeals the family court's February 1, 2006, permanency planning order awarding permanent legal guardianship of two of her children to the father's aunt and uncle in West Virginia. We reverse and remand the matter for the family court to consider whether 14 V.S.A. § 2664(a)(2) has been satisfied.

¶ 2. The two children that are the subject of this appeal are D.G., born in December 1996, and C.G., born in December 1998. The children have been in the custody of the Department for Children and Families (DCF) since September 2004 when DCF filed a petition alleging that the children were in need of care or supervision (CHINS) because of mother's neglect. At the initial disposition hearing held in the spring of 2005, the family court continued custody with DCF and adopted a case plan that recommended sending the children to their father's aunt and uncle in West Virginia to explore a possible placement with the couple as permanent legal guardians. The court determined at the disposition hearing that neither mother nor the children's father would be capable of resuming parental responsibilities within the foreseeable future. The children were placed with the father's aunt and uncle in West Virginia in July 2005. Following a permanency hearing in the fall of 2005, the family court awarded legal guardianship to the aunt and uncle, thereby transferring legal custody from DCF to the couple.

¶ 3. On appeal, mother first contends that the court "bootstrapped" findings from the merits hearing, which required proof by only a preponderance of the evidence, to satisfy the clear-and-convincing-evidence standard required to support an order establishing a permanent guardianship. See 14 V.S.A. § 2664(a) (court must find by clear and convincing evidence certain enumerated facts before issuing order for permanent guardianship). We reject this argument for several reasons. First, at the initial disposition hearing, the court stated that it was firmly convinced under any standard that the State had met its burden of demonstrating that its plan was in the children's best interests. Second, at the permanency hearing, mother's attorney objected to relitigating the merits of the case and explicitly asked the court to take judicial notice of its merits and disposition findings. Third, and most importantly, the family court (1) acknowledged in the decision being appealed that the clear-and-convincing-evidence standard was applicable, (2) defined in detail the State's burden in meeting that standard, and (3) expressly found that the evidence examined in its findings met that standard. We find no error.

¶ 4. Mother also argues that the family court erred by failing to find a significant change in material circumstances before transferring custody of the children from DCF to the aunt and uncle. We need not address the legal question posed by mother because the family court's findings amply demonstrated changed circumstances due to stagnation in mother's parenting ability. As the court found, since the disposition order and the children's move to West Virginia, mother had made little effort to communicate with the children, had been jailed for criminal offenses, had failed to participate in needed mental health counseling, and was living with her father in a community that does not allow children to reside. The court also expressed doubt that mother had ended a recent romantic relationship with a man who had a his-

tory of sexual offenses against children. In short, changed circumstances were manifest from the court's findings.

¶ 5. Next, mother argues that the court's permanency order must be reversed because the court failed to find that adoption of the children was not reasonably likely during the remainder of their minority, as required by 14 V.S.A. § 2664(a)(2). We agree. Section 2664(a)(2) states that "[b]efore issuing an order for permanent guardianship, the court shall find by clear and convincing evidence" that "[n]either returning the child to the parents nor adoption of the child is reasonably likely during the remainder of the child's minority." See *In re A.S.*, 171 Vt. 369, 373, 764 A.2d 1188, 1191 (2000) (discussing § 2664(a)(2)). Here, the family court made no finding regarding this subsection, even though § 2664(a) explicitly makes such a finding, along with others, a prerequisite to creation of a legal guardianship. Accordingly, the matter must be remanded for the court to address § 2664(a)(2). If necessary, on remand the court may take additional evidence concerning that criterion.

¶ 6. Finally, mother argues in a supplemental brief that Vermont law does not authorize awarding permanent legal guardianships to nonresidents. According to mother, the absence of an express provision for nonresident guardianship, coupled with an express requirement that a case be transferred to "the appropriate probate court in the district in which the permanent guardian resides," § 2664(c), compels the conclusion that only Vermont residents may qualify as permanent guardians. It does not appear that § 2664(c) demonstrates a legislative intent to exclude out-of-state residents from being permanent guardians. Indeed, the statute is silent as to whether out-of-state guardians are permitted — it neither specifically allows nor precludes such a possibility. In any event, we need not consider this argument because

mother failed to raise it either below or on appeal in her initial brief. See *In re D.C.*, 157 Vt. 659, 660, 613 A.2d 191, 191 (1991) (mem.) (issues not raised at earliest opportunity with specificity and clarity are not preserved for appeal). Mother may raise the issue anew on remand, however.

*Reversed and remanded for proceedings consistent with this opinion.*