*207 ¶ 43.
Dooley, J.,
concurring. I agree with the result of the majority decision and specifically agree with the part of the decision that holds that mother cannot challenge the trial court ruling to take judicial notice of the findings from the temporary-care hearing because she failed to make that challenge below. If the majority decision ended there, I would sign on to it. But the majority, in eleven paragraphs of dicta, has decided to approve of the trial court’s use of judicial notice to adopt the findings from the temporary-care hearing. I believe that the dicta is wrong and take this opportunity to explain my rationale.
¶ 44. The concept of judicial notice is completely embodied in Vermont Rule of Evidence 201, a rule that is fully consistent with preexisting Vermont evidence law on the subject. Although the majority appears to accept the point that it must find authorization for its theory of judicial notice within Rule 201, its method of doing so is clearly inconsistent with the language of the rule. I believe it is important to allow judicial notice only in very narrow and clearly defined circumstances, as I explain in more detail below. I also believe that if we are going to allow judicial notice, our most important contribution in this decision is to explain when and how findings made during one part of a juvenile case can be used in another, and the majority decision fails to do that. For these reasons, I dissent from the majority’s rationale.
¶ 45. Before turning to the applicable law, it is important to understand the findings of fact in issue. As the majority states, the findings resulted from evidence presented over four trial days on the issue of whether the court should grant temporary custody of A.M. to the child’s maternal grandmother. The thrust of the evidence was a presentation of the historical events and determinations that caused DCF to conclude that grandmother was not an acceptable custodian, followed by testimony of grandmother, mother, and mother’s sister minimizing the events and determinations and often testifying that they never happened. The majority recounted one incident where the court could not find that grandmother committed the misconduct alleged by DCF. For most of the events, often based on determinations by the court or DCF at the time, the court did not find credible the evidence of grandmother, mother, or mother’s sister. The court did not find credible grandmother’s testimony that she had overcome her alcohol and drug abuse, and it found that grandmother was a regular user of marijuana.
*208 ¶ 46. While nothing in the hearing was unusual for a CHINS proceeding involving parents with a history of opiate addiction, the characterization of grandmother as a custodian was hotly disputed and involved evidence of child abuse, other domestic abuse, inadequate parenting, and alcohol and drug abuse stretching over many years. I start with the substance of the findings to make an obvious point. No one could make a serious claim that the facts found by a trial court could be judicially noticed except in a circumstance where the court has found them in another event in the case before the court. Further, if these facts can be judicially noticed, then any facts could be judicially noticed if they are found by the court at some time in the proceeding — the substance of the facts involved is generally irrelevant to the issue.
¶ 47. Three other preliminary points are important. Rule 201 opens in subdivision (a) with a statement of its scope: “This rule governs only judicial notice of adjudicative facts.” This statement conveys two policy judgments: the rule does not govern judicial notice of facts that are not adjudicative, and it does govern judicial notice of facts that are adjudicative. The first of these judgments is unimportant to this case because we are dealing only with adjudicative facts. The second of these judgments is my first preliminary point — judicial notice of adjudicative facts is governed by Rule 201 and nothing else. The majority seems to recognize this point, but not its full meaning. This point is important because judicial notice is a concept that is broadly invoked, often in circumstances that have little to do with the scope of the rule, or even the circumstances in this case. To the extent that judicial notice is invoked in circumstances that are not within the scope of the rule, it is a misuse of the term — a misuse that has undesirable consequences.
¶ 48. The second preliminary point is that, contrary to the decision of the majority, taking judicial notice does control how a fact can be used in a proceeding, at least in noncriminal cases. That is the subject of Rule 201(g): “In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed.” (Emphasis added.) While the language describes a situation where a jury is the factfinder, it also applies where a judge is the factfinder because the noticed fact binds the parties. 21B C. Wright & K. Graham, Federal Practice and Procedure §5111.1, at 327 (2d ed. 2005) (discussing identical Federal Rule of Evidence 201(g)). It applies here. In essence, a *209 finding made to determine temporary care of the child automatically becomes a finding with respect to whether grandmother should become the permanent custodian.
¶ 49. The majority suggests that both the decision to judicially notice a fact and the effect to be given that fact is discretionary because of the opportunity to contest contained in Rule 201(e). In fact, judicial notice is “mandatory” if a party so requests and the request is properly supported, essentially the situation here. V.R.E. 201(d). The majority’s decision makes prior findings subject to judicial notice as a matter of law, eliminating any discretion in the decision. Rule 201(e) allows a party to contest the “propriety” of taking judicial notice and the “tenor” of the matter noticed. Propriety means whether the fact is indisputable. 21B Wright & Graham, supra, § 5109, at 287. There can be no argument whether that standard is met under the majority’s decision. The issue of “tenor” is whether the fact to be noticed is the same as that in the source. Id. Again, argument about its presence is foreclosed. The opportunity to contest judicial notice under the majority’s theory is an illusion.
¶ 50. The third preliminary point is that we have not held that a court can take judicial notice of earlier findings from another event in a proceeding in deciding a later disputed issue in the same proceeding. In saying this, I recognize that the State sought such a holding in In re T.C., 2007 VT 115, 182 Vt. 467, 940 A.2d 706, where the State asked the trial court to judicially notice findings from involuntary medication and initial mental-health commitment proceedings to decide whether to order continued involuntary treatment. We held that the court could judicially notice that it initially ordered hospitalization and that another court ordered the involuntary medication. Id. ¶ 16. We also affirmed the trial court’s decision not to judicially notice any findings from either the initial commitment proceeding or the involuntary-medication proceeding. Id. ¶¶ 15-16. Indeed, our discussion suggested that the preclusive effect the State sought had to be based on principles of issue preclusion, exactly my position here. Id. ¶ 18. Again, my third preliminary point is that we have not decided the question presented here. More specifically, we have never decided that the court can judicially notice findings from an earlier stage of a juvenile proceeding in order to determine an issue arising in a later stage.
¶ 51. This brings me back to the requirements of Rule 201 as applied to facts found by the trial court at an earlier event in the *210 proceeding. Rule 201(b) provides that “[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.” The first prong of Rule 201 is clearly inapplicable to findings of fact. Facts established by findings from evidence presented to the court are not facts “generally known,” as that term is used in the rule. Facts “generally known” include, for example, matters of common knowledge, business practices, human or animal behavior, or laws of nature. Reporter’s Notes to V.R.E. 201. That description would not apply to the past and present conduct and habits of grandmother, who is not a public figure.
¶ 52. Facts found based on evidence would fit only rarely under the second prong of Rule 201 — where, for example, the court found that the Earth is round based on the testimony of a witness. While the findings of trial courts reflect a professional resolution of often-conflicting evidence, one could not place those facts beyond reasonable questioning. 21B Wright & Graham, supra, § 5106.4, at 234-35 (“[IIntuitively judicial findings of fact seem different. This may explain why courts frequently get it wrong. While judicial findings of fact may be more reliable than other facts found in the file, this does not make them indisputable . . . . [M]ost courts agree that Rule 201 does not permit courts to judicially notice the truth of findings of fact”). Indeed, they are based only on the evidence before the judge in the context of a particular dispute. And of course, they often are questioned on appeal. The findings here are being questioned by mother, who is arguing that if she could put on new evidence she could demonstrate that at least part of the findings are inaccurate. Again, the past and present conduct of grandmother is not subject to “accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.”
¶ 53. This prong clearly demonstrates the difference between the holding of T.C. and the extension of T.C. the majority adopts here. In T.C., we affirmed the trial court taking judicial notice of the prior orders of the court and the statutory elements on which they were based. 2007 VT 115, ¶ 15. The order and its content are capable of accurate and ready determination from the court records — the only source of such information and one “whose accuracy cannot reasonably be questioned.” See 21B Wright & *211 Graham, supra, § 5106.4, at 228. Similarly, the fact that the court made certain findings of fact could be the subject of judicial notice. What is clearly outside the authorization of Rule 201(b)(2) is the substance of the facts found. Id. § 5106.4, at 234-35.[2]
¶ 54. The only way that facts found based on evidence become accurate beyond reasonable question is by making them so as a matter of law, turning the consequence of judicial notice — indisputability — into the reason why it is allowed, perfectly circular reasoning. Fundamentally, this is the reasoning behind applying judicial notice to use the earlier findings of fact here.
¶ 55. While it is important not to resolve this case on the inapplicable ground of judicial notice, it is even more important to resolve it on the right ground. Findings of fact can arise in many contexts, such as in response to a motion to continue by a party, in a decision on a motion seeking temporary relief, or in resolution of an earlier stage of a proceeding. It is fair and just that the findings should be conclusive in some of these instances but not in others. As a policy matter, the main drawback to using judicial notice as a way of determining whether a finding of fact from an earlier stage of a proceeding is conclusive in a later stage is that the nature of the issue in which the finding was made is irrelevant. Thus, a finding of fact in response to a motion to continue is just as conclusive as one made in a CHINS merits determination.[3]
*212 ¶ 56. Although we do not have a definitive ruling, there are two possible routes to allowing reuse of findings from earlier proceedings in the same case. The most common method is to allow reuse under the law-of-the-case doctrine, which applies when reuse is occurring in one case. See In re Carrigan Conditional Use, 2014 VT 125, ¶ 26 n.4, 198 Vt. 438, 117 A.3d 788; 18B C. Wright et al., Federal Practice and Procedure § 4478, at 646 (2d ed. 2002) (“Legions of cases, both in trial courts and appellate courts, illustrate law-of-the-case refusals to reconsider a matter once resolved in a continuing proceeding.”). We have held that the law-of-the-case doctrine applies to findings of fact where there is no new evidence. See Halpern v. Kantor, 139 Vt. 365, 367, 428 A.2d 1132, 1134 (1981); 18B Wright et al., supra, § 4478.5, at 808 (“If an attempt is made to press the same fact issue for a second time on an unchanged record, law-of-the-case reluctance approaches maximum force.”). It is a rule of practice, rather than one of law, and as a result the court has discretion to depart from it in the appropriate case. Thus, it is more flexible than judicial notice and can be shaped to avoid overuse. See Morrisseau v. Fayette, 164 Vt. 358, 364, 670 A.2d 820, 824 (1995). Thus, even though we have recognized that the law-of-the-case doctrine may not apply to findings of fact where new evidence is presented, “persuasive justification should be required to support consideration of the new evidence.” 18B Wright et al., supra, § 4478, at 680-81; see also id. § 4478.1, at 695 (stating that where earlier ruling has “shaped later proceedings in ways that can be undone only at the cost of delay and duplicating expense!,] ... the forward progress of the case discourages reconsideration”). The law-of-the-case doctrine fits the circumstances of this case.
¶ 57. The second possibility is issue preclusion. We have generally analyzed the preclusive effect of the outcome of one part of a juvenile proceeding on another based on the principles of issue preclusion, or collateral estoppel. In In re J.R., we analyzed whether findings and conclusions from a CHINS merits hearing had preclusive effect when the court went on to consider termination of parental rights. We used issue preclusion to determine the preclusive effect, holding that because the standard of proof *213 was greater at the termination stage than at the CHINS merits stage, issue preclusion could not apply. 164 Vt. at 270-71, 668 A.2d at 673-74; see also In re A.S., 157 Vt. 487, 489, 599 A.2d 736, 737 (1991) (stating that collateral estoppel prevents attack on lack of CHINS disposition order where legality of state custody was resolved in earlier proceeding in same case). The fourth and fifth elements of issue preclusion are particularly relevant to this discussion. They are: “there was a full and fair opportunity to litigate the issue in the earlier action” and “applying preclusion in the later action is fair.” In re P.J., 2009 VT 5, ¶¶ 8, 13, 185 Vt. 606, 969 A.2d 133 (mem.). Whatever the label, these are the types of considerations that should govern reuse of the substance of findings of fact.
¶ 58. The majority claims that issue preclusion is unavailable because of the lack of a final judgment as a result of the temporary-care hearing.[4] Put another way, the majority’s opposition is because a temporary-care order is another event in one case, where issue preclusion involves the preclusive effect of a judgment in one case on the resolution of an issue in another case. This way of applying issue preclusion makes perfect sense for ordinary civil litigation.
¶ 59. We recently explained, however, in In re D.D., 2013 VT 79, 194 Vt. 508, 82 A.3d 1143, that “[i]n juvenile proceedings, finality is measured differently from other types of cases given the important rights at stake and the ongoing nature of the proceeding,” and held that the determination of CHINS is a separate action from the disposition of the child for purposes of finality and the obligation to appeal. Id. ¶ 22. I also note the observation of the United States Supreme Court in Arizona v. California, 460 U.S. 605 (1983):
[WJhile the technical rules of preclusion are not strictly applicable, the principles upon which these rules are founded should inform our decision. It is clear that res judicata and collateral estoppel do not apply if a party moves the rendering court in the same proceeding to correct or modify its judgment. Nevertheless, a fundamental precept of common-law adjudication is that an issue once determined by a competent court is conclusive.
*214 Id. at 619 (citation omitted).
¶ 60. Of all of the elements of issue preclusion, the one that has most evolved is the final judgment element. Thus, § 13 of the Restatement (Second) of Judgments provides that “for purposes of issue preclusion . . . , ‘final judgment’ includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.” Restatement (Second) of Judgments § 13 (1982). We have adopted § 13, in part, in a related context, see Scott v. City of Newport, 2004 VT 64, ¶ 12, 177 Vt. 491, 857 A.2d 317 (mem.), and have routinely relied upon this Restatement, see, e.g., OCS/Pappas v. O’Brien, 2013 VT 11, ¶¶ 20-21, 193 Vt. 340, 67 A.3d 916.
¶ 61. It is important to recognize that finality for purposes of issue preclusion under § 13 need not be the same as for the right or obligation to appeal. The “sufficiently firm” standard is not the same as that for determining whether an order is final such that it can be appealed. See In re Burlington Bagel Bakery, Inc., 150 Vt. 20, 21, 549 A.2d 1044, 1045 (1988) (stating that order is final for purposes of appeal where it “conclusively determine[s] the rights of the parties, leaving nothing for the court to do but to execute the judgment” (quotation omitted)). Whether the temporary-care order involved in this case can be appealed is generally irrelevant because the disposition order will moot the temporary-care order and is likely to occur before any appeal of the temporary-care order could be decided. The absence of the realistic ability to appeal, as well-asserted errors in reaching the temporary care order, can, of course, be grounds for a determination that applying issue preclusion in these circumstances would be unfair.
¶ 62. I would hold that reuse of the findings in this case should be judged under the law-of-the-case standard because that doctrine clearly applies and decides this case. I would leave for other cases to determine when principles of issue preclusion should be applied.
¶ 63. I concur in the disposition of this case for two main reasons. First, the adjudication involved in determining temporary custody clearly offered the parents and grandmother a full and fair opportunity to litigate the historical facts related to grandmother’s qualifications as a temporary custodian. Because all parties had legal representation and the relevant witnesses were fully examined and cross-examined in the four days of hearing, *215 the findings can be reused under the law-of-the-case doctrine, and it was within the discretion of the trial court not to allow new evidence under the circumstances.
¶ 64. There is another important reason why the standards are met. Section 5315(d) of Title 33 provides that:
A finding of fact made after a contested temporary care hearing based on nonhearsay evidence may be adopted by the Court as a finding of fact at a contested merits hearing provided that a witness who testified at the temporary care hearing may be recalled by any party at a contested merits hearing to supplement his or her testimony.
Although the statute does not technically apply here, because the court was using findings from the temporary-care hearing to resolve a disposition option and not to determine whether a child is CHINS, it is a legislative determination that it is fair to reuse temporary-care findings in later stages of the proceeding. It places the parties on notice of potential reuse and provides an additional incentive, if one is needed, to fully litigate the issues in the temporary-care hearing. It underscores why the law-of-the-case doctrine is appropriate in this circumstance.
¶ 65. It is unfortunate that the majority has decided to wander unnecessarily into the subject of judicial notice of the substance of findings of fact in dicta. In my judgment the unintended consequences of its decision will be undesirable and prevent the proper analysis of when the substance of findings should be reused. While I concur in the judgment, I dissent from the alternative holding affirming the trial court’s use of judicial notice.
¶ 66. I am authorized to state that Justice Robinson joins this concurrence.

 The majority cites this same source for its proposition that the court can take judicial notice of the substance of the facts found. In fact, the source draws exactly the distinction used in this concurrence — a court can take judicial notice that the facts were found earlier but not of their substance for reuse.

 The circumstance that a fact was found under a lower standard of proof and is being deemed conclusive on an issue for which there is a higher standard of proof is wholly consistent with the concept of judicial notice because the fact must be indisputable for it to be considered a subject of judicial notice under Rule 201. Thus, the standard of proof should make no difference where a fact is properly established by judicial notice. If a fact is “indisputable,” it meets any standard of review including one requiring proof by clear and convincing evidence.
Without mentioning judicial notice, however, we have consistently held that a finding of fact made in a CHINS merits decision may not be adopted by the court in a disposition determination where the standard of proof required for disposition is higher than that actually employed in making the finding. See In re D.G., 2006 VT 60, ¶ 3, 180 Vt. 577, 904 A.2d 1206 (mem.); In re J.T., 166 Vt. 173, 179-80, 693 A.2d 283, 287 (1997); In re C.K., 164 Vt. 462, 471, 671 A.2d 1270, 1275 (1995); In re J.R., 164 Vt. 267, 271, 668 A.2d 670, 674 (1995). This is an example of where *212 our jurisprudence on using prior factfinding in CHINS cases is inconsistent with the theory that findings of fact can be reused by judicial notice. We do not allow reuse under the higher standard because the finding is not actually “indisputable,” despite the adoption of the fiction that it is.

 If an order is final, it resulted from a separate action for purposes of issue preclusion.