2009 VT 5

**In re P.J.**

[969 A.2d 133]

No. 08-057

¶ 1. January 26, 2009. Petitioner P.J., mother of E.M., appeals a decision by the Human Services Board denying her an evidentiary hearing under 33 V.S.A. § 4916(h)[1] to expunge her name from the child abuse registry maintained pursuant

to 33 V.S.A. § 4916(a). The Board determined that mother's application to expunge was collaterally estopped by the findings the Chittenden Family Court made during a prior hearing resulting in the termination of mother's parental rights with respect to E.M. On appeal, mother argues that the Board misapplied the collateral estoppel doctrine and that she is entitled to a fair hearing. We affirm.

¶ 2. In July 2004, mother's infant child was admitted to the hospital by the child's grandmother, who feared that the child was too thin and weak. The child was underweight and diagnosed as a failure-to-thrive baby. Pursuant to 33 V.S.A. § 4914, a report was made to the Department for Children and Families (DCF) that E.M. was suffering from nutritional and medical neglect. DCF investigated this report, determined that the report was substantiated, and placed it in a registry created for that purpose in August 2004. See 33 V.S.A. §§ 4915-4916.

¶ 3. Following this diagnosis, DCF also commenced a child in need of care or supervision (CHINS) proceeding in family court. The CHINS petition asserted that E.M. was without proper parental care, based on an affidavit by a DCF caseworker that set forth the foregoing facts about mother's neglect of E.M.'s nutritional and medical needs.[2] E.M. re-

---

[1] We note that the right to a Board hearing to review a substantiation decision

was amended and moved from 33 V.S.A. § 4916(h) to 33 V.S.A. § 4916b, effective September 1, 2007. See 2007, No. 77, § 1.

[2] The factual presentation in this case was somewhat careless with both parties referring in their memoranda to the Board to documents that were not provided to the hearing officer. DCF relied upon the content of the affidavit that accompanied the CHINS petition, after noting that the affidavit had been supplied to mother's counsel. Mother did not object to this usage. As a result, we have used the affidavit from the CHINS proceeding file, as well as mother's merits stipulation and

mained in mother's care subject to a comprehensive protective order issued by the court. The expectation was that if mother complied with the terms of the protective order over a specified period, the CHINS case would be dismissed without adjudication. Before the expiration of the protective order, mother was charged with aggravated assault and cruelty to a child other than E.M.[3] In June 2005, the family court held a merits hearing and adjudicated E.M. as CHINS based on mother's stipulation. In this stipulation, mother agreed that "[a]t the time the petition was filed, [E.M.] was a child in need of care and supervision due to [mother's] mental health issues and substance abuse." In determining that E.M. was CHINS, the order of the family court specifically concluded that "the allegations of the Petition have been established."

¶ 4. In April 2006, the State filed a petition to terminate mother's parental rights to E.M. The family court issued a written order terminating mother's parental rights in August 2006. We affirmed that decision. *In re C.C.*, No. 2006-333 (Vt., January 25, 2007) (unreported mem.).

¶ 5. In May 2007, mother appealed DCF's August 2004 substantiation determination to the Board. The Board ruled

that the family court's findings in the termination of parental rights decision precluded mother's request for a hearing on the issue of nutritional neglect by collateral estoppel. In reaching this conclusion, the Board applied the standard that substantiation of neglect existed if the determination was "based upon accurate and reliable information that would lead a reasonable person to believe that the child has been abused or neglected." 33 V.S.A. § 4912(10). It held that the juvenile court had ruled in the termination proceeding that the child had been neglected for failure to meet her nutritional needs and that ruling was binding on mother and could not be relitigated. It further held that the juvenile court holding met the requirement of the substantiation statute. This appeal followed.[4]

¶ 6. In this Court, petitioner argues that collateral estoppel does not apply because a determination that mother neglected E.M.'s nutritional needs was not essential to the judgment terminating her parental rights, was not actually litigated in that proceeding, and could not have been litigated in that proceeding. While we might agree that the termination decision alone does not meet the standard for collateral estoppel, the CHINS merits decision does meet that standard and we affirm.

¶ 7. Before detailing our reasoning, we first address the appropriate standard of review. The applicability of collateral estoppel is a question of law, which we generally review de novo. See *State v*

---

the merits determination of the court, in this decision. We would reach the same conclusions from the docket entries alone — which were included in the record presented to the hearing officer — but the use of the other documents from the CHINS proceeding case enables us to be more specific in our discussion. Because we have quoted from documents in the confidential juvenile proceeding, we have eliminated names, including the name of mother, from this decision.

[3] Mother was eventually convicted of these crimes and given a two-to-six-year prison sentence.

[4] The Board remanded the issue of medical neglect to the hearing officer, concluding that this claim was not resolved by the termination of parental rights proceeding and that issue preclusion did not apply to it. As neither party has appealed this part of the order, there is not a complete final judgment. Nevertheless, we review the issue that was appealed pursuant to Vermont Rule of Appellate Procedure 2.

*Pollander*, 167 Vt. 301, 304, 706 A.2d 1359, 1360 (1997). The State argues, however, that we should give deferential review to the Board's collateral estoppel decision because of the Board's extensive experience with the application of preclusion in fair hearing proceedings. We generally defer to the decisions of administrative agencies in recognition of their particular expertise. *Caledonian Record Publ'g Co. v. Dep't of Employment & Training*, 151 Vt. 256, 260, 559 A.2d 678, 681 (1989). While the Board may have greater institutional experience with the application of issue preclusion than other administrative agencies, the Board's primary area of expertise is not the analysis and application of judicial doctrines. Because the applicability of judicially-created doctrines is a question of law outside of the Board's special expertise, we review the application of collateral estoppel de novo. See *In re Cent. Vt. Pub. Serv. Corp.*, 172 Vt. 14, 19, 769 A.2d 668, 673 (2001) (stating that application of collateral estoppel is not within Public Service Board's expertise).

¶ 8. In applying the doctrine of collateral estoppel, this Court follows the five-part test enunciated in *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 265, 583 A.2d 583, 587 (1990). Collateral estoppel is appropriate where:

> (1) preclusion is asserted against one who was a party . . . in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.

*Id.* Collateral estoppel applies to issues of both fact and law. *Mellin v. Flood Brook Union Sch. Dist.*, 173 Vt. 202, 209, 790 A.2d 408, 416 (2001). Collateral estoppel

may apply in administrative proceedings. *In re Stormwater NPDES Petition*, 2006 VT 91, ¶ 23, 180 Vt. 261, 910 A.2d 824. The purpose of collateral estoppel is to conserve the resources of courts and litigants by protecting them against repetitive litigation, to promote the finality of judgments, to encourage reliance on judicial decisions, and to decrease the chances of inconsistent adjudication. *Cent. Vt. Pub. Serv. Corp.*, 172 Vt. at 20, 769 A.2d at 673.

¶ 9. In arguing whether collateral estoppel bars the requested hearing on the nutritional neglect issue, the parties and the Board have generally focused only on whether the termination proceeding satisfied the *Trepanier* factors. However, prior to the termination proceeding, the family court necessarily determined that E.M. was a child in need of care or supervision, based upon a stipulation agreed to by mother. For the reasons discussed below, we conclude that the CHINS determination precludes relitigation of the nutritional neglect issue.[5]

¶ 10. The first element of the *Trepanier* test requires that the party to be bound by collateral estoppel be a party to the prior proceedings. *Alpine Haven Property Owners Ass'n v. Deptula*, 2003 VT 51, ¶ 14, 175 Vt. 559, 830 A.2d 78 (mem.). This

---

[5] Whether collateral estoppel applies is a question of law; as such we may affirm the trial court's judgment on an alternative ground. *Larkin v. City of Burlington*, 172 Vt. 566, 568, 772 A.2d 553, 556 (2001) (mem.) (Supreme Court will not reverse trial court's decision if record reveals any legal grounds justifying result); *In re Handy*, 171 Vt. 336, 343, 764 A.2d 1226, 1234 (2000) (same). Since we conclude that the CHINS determination precludes relitigation of the nutritional neglect substantiation issue, we need not reach whether the findings specific to the termination of parental rights proceeding alone would satisfy the *Trepanier* factors.

element is satisfied; as custodial parent, mother was a party to the family court proceedings, see 33 V.S.A. §§ 5502(a)(13), 5519, and is the party to be bound by collateral estoppel.

¶ 11. The second element requires that the issue was "resolved by a final judgment on the merits." *Trepanier*, 155 Vt. at 265, 583 A.2d at 587. The CHINS determination became a final judgment when mother did not appeal this determination. See *Cent. Vt. Pub. Serv. Corp.*, 172 Vt. at 30, 769 A.2d at 680 (stating that decision became a final judgment when not appealed).

¶ 12. The third element requires that the issue be "the same as the one raised in the later action." *Trepanier*, 155 Vt. at 265, 583 A.2d at 587. Preclusion applies only to issues "necessarily and essentially determined in a prior action." *Pollander*, 167 Vt. at 305, 706 A.2d at 1361 (quotation omitted). The issue at the requested Board hearing would be whether the nutritional neglect report was substantiated — that is, whether the report was based upon accurate and reliable information and whether this information leads a reasonable person to believe that the child had been abused or neglected. 33 V.S.A. §§ 4916(h), 4912(10). The facts underlying the nutritional neglect report were addressed in the CHINS determination. The family court concluded that "the allegations of the Petition have been established." The CHINS petition asserted that E.M. was without proper parental care, based on an affidavit that set forth the facts regarding mother's neglect of E.M.'s nutritional and medical needs. The court's finding that the petition allegations were established necessarily meant that the facts establishing that mother neglected E.M.'s nutritional needs were determined to be true. Further, mother stipulated that at the time the petition was filed, E.M. was CHINS. Because the petition was based only on facts supporting the neglect allegations, and not the

subsequent criminal charges, mother necessarily agreed that she had neglected E.M.'s nutritional needs.

¶ 13. The fourth and fifth elements — whether there was a full and fair opportunity to litigate and whether it is fair to apply preclusion here — are generally considered together. *Cent. Vt. Pub. Serv. Corp.*, 172 Vt. at 30-31, 769 A.2d at 681. No one test is decisive. Factors to consider include: the type of issue preclusion, the choice of forum, the incentive to litigate, the foreseeability of future litigation, the legal standards and burdens in each action, the procedural opportunities of each forum, and the possibility of inconsistent determinations. *Id.* at 31, 769 A.2d at 681; see also *Stevens v. Stearns*, 2003 VT 74, ¶ 13, 175 Vt. 428, 833 A.2d 835 ("In deciding whether issue preclusion is appropriate, we balance our desire not to deprive a litigant of an adequate day in court against a desire to prevent repetitious litigation of what is essentially the same dispute." (quotation omitted)). The party opposing application of collateral estoppel has the burden of showing that it is appropriate to relitigate an issue. *Trepanier*, 155 Vt. at 266, 583 A.2d at 587-88. Mother has not satisfied this burden. Mother had the opportunity to contest the facts underlying the nutritional neglect allegation at the CHINS merits hearing. That mother chose to stipulate and not contest this issue does not negate the fact that she had the opportunity to do so. In both proceedings, the State has the burden of proving by a preponderance of the evidence the nutritional neglect facts. See *In re T.R.*, 169 Vt. 574, 574, 730 A.2d 621, 622 (1999) (mem.) (CHINS proceeding); *In re Selivonik*, 164 Vt. 383, 389, 670 A.2d 831, 835 (1995) (substantiation hearing under 33 V.S.A. § 4916(h)).

¶ 14. Mother argues that she had no incentive to litigate the nutritional neglect facts because the new criminal charges "immediately eclipsed everything that

had occurred" previously. While her incentives to contest the nutritional neglect facts might have been lessened due to the criminal charges, they were not eliminated. As the CHINS petition had not been amended to address the criminal allegations, the only relevant facts in the CHINS determination were the facts underlying the nutritional and medical neglect allegations in the CHINS petition. Her incentive was not eliminated because without these allegations E.M. could not have been adjudicated CHINS at that time. Further, it would be inconsistent for the family court to have determined that E.M. was CHINS at the time the petition was filed, and then for the Board to determine now there was no nutritional neglect. For the foregoing reasons, we find that mother has not established that it is appropriate for her to relitigate whether she neglected E.M.'s nutritional needs.

¶ 15. As all the elements of the *Trepanier* test have been satisfied, we find that the CHINS determination precludes mother from relitigating the nutritional neglect facts and affirm the Board's denial of a hearing to do so.

*Affirmed.*